IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CLAUDETTE WINSTEAD, ) | |
| ) | |
| Plaintiff, ) | No. 06 C 6072 |
| ) | |
| v. ) | Judge Ronald A. Guzmán |
| ) | |
| MIDWEST RENAL CARE, INC., ) | |
| BRIDGET P. ROSS, DAMARA ROSS, ) | |
| RALPH DEMARCO, and J. MARIO ) | |
| MORENO, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OF OPINION AND ORDER

Claudette Winstead has sued Midwest Renal Care Inc. ("Midwest"), Bridget P. Ross, Damara Ross, Ralph DeMarco and J. Mario Moreno for their alleged violations of federal securities laws, and for breach of contract, negligence, conversion and fraud.[1] Defendants have filed motions pursuant to Federal Rules of Civil Procedure ("Rule") 12(b)(6) and (e) to dismiss the claims asserted against them or for a more definite statement. For the reasons set forth below, the Court grants the motions to dismiss the federal claims and declines to exercise supplemental jurisdiction over the state law claims.

### Facts

Midwest is a Nevada corporation with its principal place of business in Chicago. (Compl. ¶ 14.) When Midwest was incorporated in 1997, fifty-two percent of its stock was held by defendant Bridget Ross and forty-eight percent of its stock was held by plaintiff. (*Id.* ¶ 15.)

In 1998, Midwest sought additional shareholders. (*Id.*) Consequently, Bridget and plaintiff reduced their stock ownership to thirty-six and thirty-one percent, respectively, and the remaining

---

[1] Plaintiff also named Michelle Ross-King and Curtis Ross as defendants but, because she failed to effect service on them, the Court hereby dismisses them from this suit pursuant to Federal Rule of Civil Procedure 4(m).

thirty-three percent of Midwest's stock was sold to various people through a private placement memorandum. (*Id.* ¶¶ 15, 18; *id.*, Ex. C, 10/19/98 Private Placement Mem.)

In 1999, Midwest purchased twenty dialysis machines from Baxter Healthcare. (*Id.* ¶ 24.) To finance the purchase, each person who owned more than twenty percent of Midwest's stock was required to pledge their stock as a guarantee of the purchase price. (*Id.* ¶ 24.) Plaintiff's 3,720 shares were among those pledged to Baxter. (*Id.* ¶ 25.)

In January 2000, Midwest's board of directors, which included plaintiff, Bridget and defendants Moreno and Damara Ross, voted to "take over" ten percent of plaintiff's stock and give it to three Midwest employees. (*Id.* ¶¶ 19-20.)

In March 2004, after Baxter had been paid in full, it returned to Midwest the stock certificates that had been pledged. (*Id.* ¶¶ 25, 68.) Subsequently, plaintiff asked Bridget to return plaintiff's stock certificate. (*Id.* ¶ 25.) Bridget told plaintiff that she did not have the certificate and offered to issue a replacement to her. (*Id.*)

Bridget did not, however, issue a replacement certificate. (*Id.* ¶ 26.) Rather, on January 17, 2006, Bridget sent plaintiff a new stock certificate and shareholder's agreement for plaintiff's signature. (*Id.*) The new certificate was for 36.733 units of stock, which is equivalent to 3,673.3 shares, 46.7 shares less than plaintiff says she pledged. (*Id.* ¶¶ 25-26, 81.) Plaintiff refused to accept the new certificate and has continued to demand that an accurate duplicate stock certificate be provided to her. (*Id.* ¶ 26.)

On November 7, 2006, plaintiff filed this suit alleging, among other things, that defendants' actions violate federal securities laws.

## The Legal Standard

On a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded factual allegations of the complaint, drawing all reasonable inferences in plaintiff's favor. *Forseth v. Vill. of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," but plaintiff must make sufficient "[f]actual allegations . . . to raise [her] right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (quotation omitted). However, no claim will be dismissed unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

## Discussion

### Federal Claims

In Count I, plaintiff alleges that defendants' actions violated the Securities Act of 1933 ("the 1933 Act") and the Securities Exchange Act of 1934 ("the 1934 Act"), but she does not identify specifically which of their actions she contests. If, however, she challenges any action defendants took with respect to her stock more than five years before she filed this suit, those claims are time-barred. *See* 28 U.S.C. § 1658(b) (stating that "a private right of action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws . . . may be brought not later than the earlier of . . . 2 years after the discovery of the facts constituting the violation; or . . . 5 years after such violation."); *see also Lampf, Pleva, Lifkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 363 (1991) (stating that period of repose for securities fraud claims is not subject to equitable tolling). Thus, any claims based on Midwest's issuance of stock in 1997, the 1998 private placement or the "take over" of ten percent of plaintiff's stock in January 2000 are untimely and must be dismissed.

The only other action plaintiff could be contesting is defendants' issuance of the new stock certificate in January 2006. That action falls within the ambit of the 1933 Act only if it constitutes an "offer to sell" or a "sale" of a "security" within the meaning of the statute. *See* 15 U.S.C. § 77*l*(a) (imposing liability on anyone who uses interstate commerce or the mail to offer or sell an unregistered security or who communicates a false statement of material fact in connection with the offer or sale of a security through interstate commerce or the mail); *id.* § 77b(a)(1) (defining "security" as, among other things, stock); *id.* § 77b(a)(3) (defining "sale" as "every contract of sale or disposition of a security . . . , for value" and "offer to sell" as "every attempt or offer to dispose of . . . , a security or interest in a security, for value"). Moreover, even if it does, the 1933 Act authorizes plaintiff to sue only if she purchased the stock from defendants. *See id.* §77*l* (stating that anyone who violates the 1933 Act "shall be liable . . . to *the person purchasing such security* from him . . . [for] the consideration paid for such security") (emphasis added).

Plaintiff alleges that defendants "forwarded" a certificate for unregistered stock and a shareholder's agreement to her in January 2006. (Compl. ¶¶ 26, 82-86.) Viewed favorably to her, those allegations support the inference that defendants offered to sell her an unregistered security as those terms are defined by the statute.

But plaintiff also affirmatively alleges that she rejected that offer:

> . . . Plaintiff originally accepted the new stock certificate in settlement until Plaintiff discovered the stock was illegally issued. Plaintiff told the Board of [Midwest] . . . that the new issue was not correct and . . . . requested that a valid duplicate certificate be provided to her representing her true ownership, 31% of [Midwest], or that [Midwest] buy Plaintiff's stock.

(*Id.* ¶ 26.) Because plaintiff admits that she did not purchase the stock defendants offered to her in January 2006, she does not have a cause of action under the 1933 Act.

Her 1934 Act claim suffers the same fate. Section 10(b) of that Act prohibits the use of any manipulative or deceptive device "in connection with the purchase or sale of any security." 15 U.S.C. § 78j(b). According to the Supreme Court, that language limits "the plaintiff class for purposes of

4

section 10(b) and Rule 10b-5 private damage actions . . . to purchasers and sellers of securities." *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 731-32 (1975). Having affirmatively alleged that she did not purchase the stock offered to her in January 2006, plaintiff cannot state a claim under the 1934 Act.

### State Claims

In Counts Two through Six of her complaint, plaintiff asserts various state law claims against defendants. Having dismissed the only federal claims, the Court declines to exercise supplemental jurisdiction over these state claims. *See* 28 U.S.C. § 1367(c)(3).

### Conclusion

For the reasons set forth above, the Court grants the motion to dismiss Count One filed by Midwest and joined by DeMarco, Bridget Ross and Damara Ross [doc. nos. 90, 98 & 99], and the portion of Moreno's motion to dismiss [doc. no. 94] that is directed to Count One. The claims plaintiff asserts in Count I are dismissed with prejudice. The Court declines to exercise supplemental jurisdiction over the state law claims plaintiff asserts in Counts Two through Six, which are dismissed without prejudice to refiling in state court. The Court strikes as moot Midwest's motions to dismiss and for a more definite statement of the state claims as well as the remainder of Moreno's motion to dismiss [doc. nos. 91 & 92]. This case is terminated.

**SO ORDERED.**  ENTERED: 10/26/07

RONALD A. GUZMAN
United States District Judge